**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY J. PROL, ESQ.
PA Attorney ID: 319524
NJ Attorney ID: 125782014
1628 Pine Street
Philadelphia, PA 19103
Phone: 215-391-4790
Fax: 215-893-5288
Email: tim@dereksmithlaw.com
*Attorneys for Plaintiff, Sergey Stolyarov*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF NEW JERSEY

| | | |
|---|---|---|
| SERGEY STOLYAROV | : | |
| | : | |
| Plaintiff | : | Case No. _____ |
| | : | |
| v. | : | |
| | : | |
| SUSSEX COUNTY | : | |
| COMMUNITY COLLEGE and | : | JURY TRIAL DEMANDED |
| JAMES GADDY (individually) and | : | |
| ROSE FIGUEROA (individually) | : | |
| | : | |
| Defendants | : | |
| | : | |

Plaintiff, Sergey Stolyarov, by and through undersigned counsel, hereby files this Civil Action Complaint against Defendants Sussex Community College, James Gaddy, and Rose Figueroa (collectively "Defendants") and avers the following:

### NATURE OF THE CASE

1.    Plaintiff complains as a result of violations of the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 623 *et.seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and New Jersey Law Against Discrimination (NJLAD or LAD) N.J.S.A. 10:5-1 *et. seq.*, and

seeks damages to redress the injuries Plaintiff has suffered as a result of being subject to discrimination, retaliation, and wrongful termination by the aforementioned Defendants.

2.    Furthermore, this action is to redress the Defendants' unlawful employment practices against Plaintiff, including Defendants' unlawful discrimination against Plaintiff because of his disability and for Defendants' wrongful actions against Plaintiff leading up to, and including, his unlawful termination.

3.    Plaintiff seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement of attorneys' fees, litigation costs, and pre- and post- judgment interest as remedies for Defendants' violations of his rights.

## PARTIES

4.    Plaintiff, Sergey Stolyarov (hereinafter referred to as "Plaintiff") is a male individual who is sixty-eight (68) years old whose national origin is Russia and practices the Russan Orthodox religion.

5.    Defendant, Sussex County Community College (hereinafter referred to as "Defendant Sussex") is a public community college in the town of Newton in Sussex County, New Jersey, located at 1 College Hill Road, Newton, New Jersey 07860.

6.    Defendant, James Gaddy (hereinafter referred to as "Defendant Gaddy") is a male individual formerly employed by Defendant Sussex as Chief Operating Officer and Chief Human Resources Officer.

7.    At all times material, Defendant Gaddy maintained supervisory authority over Plaintiff.

8.    Defendant, Rose Figueroa "hereinafter referred to as "Defendant Figueroa") is a female individual employed by Defendant Sussex as a Custodial Supervisor.

9.    At all times material, Defendant Figueora maintained supervisory authority over Plaintiff.

## JURISDICTION, VENUE, AND NON-JURISDICTIONAL PRESCRIPTIONS

10. This Court has subject matter jurisdiction over this matter as it involves a Federal Question, 28 U.S.C. §1331, and the Court maintains supplemental jurisdiction, 28 U.S.C. §1367, over the New Jersey State Law causes of action.

11. Venue is appropriate before this Court as all parties reside in the Eastern District of Pennsylvania and all actions and omissions giving rise to this litigation occurred in the Eastern District of Pennsylvania (i.e. Berks, Bucks, Chester, Delaware, Lancaster, Lehigh, Montgomery, Northampton, and Philadelphia).

12. Furthermore, Plaintiff has adequately satisfied non-Jurisdictional Prescriptions to bring these employment discrimination claims as he exhausted administrative remedies by having filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission, and Plaintiff having received a Notice of Right to Sue.

## STATEMENT OF MATERIAL FACTS

13. Plaintiff was hired by Defendant Sussex in July 1999 as a maintenance worker, however, Defendants maintain that he was hired as a Custodian.

14. During his tenure at Defendant Sussex, Plaintiff had a stellar job performance and obtained two degrees, one in Engineering and one in Education.

15. In January 2023, the position of Facility Supervisor at Defendant Sussex was opened.

16. It was usual practice for Defendant Sussex to fill the position of Facility Supervisor by promoting in-house employees based on seniority.

17. This practice was consistently followed, and Plaintiff was explicitly informed by the previous supervisor that promotions were determined by seniority.

18. Despite this, Defendant Sussex deviated from this established practice and failed to promote Plaintiff, instead selecting someone considerably younger and with less experience for the position.

19. Defendant Figueora was hired as the Facility Supervisor.

20. Defendant Figueora was only thirty-five (35) years of age, and unfamiliar with college structure, procedure, and custodial work.

21. From the time Defendant Figueroa was hired, Defendant Figueroa and Defendant Gaddy began subjecting Plaintiff to discrimination based on his age, national origin (Russian), and tangentially his religion of Russian Orthodox Christian, creating a hostile work environment.

22. This discrimination made it difficult for Plaintiff to perform his job and contributed to a workplace culture of exclusion and sustained mistreatment.

23. About March 1, 2023, Defendant Figueroa instructed Plaintiff to go into a single-user bathroom with a young unfamiliar woman to clean it.

24. This was against Plaintiff's religious beliefs and furthermore made Plaintiff uncomfortable.

25. When Plaintiff refused, Defendant Figueroa became furious, raised her voice, and pointed at Plaintiff, repeatedly yelling, "You! Go to the bathroom with her!"

26. Plaintiff felt humiliated by this.

27. Plaintiff attempted to address this issue with Human Resources, but it was ignored.

28. Instead, Plaintiff received a warning for refusing to engage in an order that conflicted with his religious beliefs.

29. Just a couple short weeks after reporting the uncomfortable situation which was against his religion, and in retaliation for making that complaint, about March 20, 2023 Defendant Figueroa drafted a written warning and accused Plaintiff of poor work performance.

30. Plaintiff had twenty-four (24) years of experience with glowing reviews from previous supervisors and college faculty prior to this point.

31. Defendant Figueroa's claims of poor work performance were unsupportable and were pretextual.

32. Defendant Figueora's pretextual comments included but were not limited to: Plaintiff refusing to complete tasks, Plaintiff sitting with legs propped up on the desk, Plaintiff engaging in unprofessional or unbecoming conduct.

33. Plaintiff went to Defendant Gaddy to complain of Defendant Figueroa's treatment of him, but Defendant Gaddy only told Plaintiff, "You have to please her."

34. Furthermore, Defendant Gaddy would regularly make an issue to Plaintiff of Plaintiff's age, and on one occasion told Plaintiff to "Behave" as he grabbed Plaintiff's hand.

35. Plaintiff moved his hand away.

36. Defendant Gaddy then advised Plaintiff, "I will give you a warning; I will fire you. You are old and you only have a year left."

37. This made Plaintiff fear for his job.

38. Yet the harassment and discrimination continued.

39. Defendant Gaddy held a lunch with for workers of Defendant Sussex County Community College which held a meditation session.

40. This meditation session was against Plaintiff's religion.

41. When Plaintiff refused to participate he was met with warnings and threats and was barred from the campus while he was on his leave time.

42. Defendant Figueroa increased Plaintiff's workload significantly with no additional pay.

43. By way of example, Defendant Figueroa would time Plaintiff's work, such as telling him to clean fourteen (14) bathrooms in twenty (20) minutes.

44. Defendant Figueroa did not time other employees.

45. Defendant Figueroa required Plaintiff to clean a one hundred thousand (100,000) square foot area in an eight (8) hour shift.

46. To compare, Common Education Data Standards (ceds.ed.gov) recommends that a custodian be given no more than ten thousand (10,000) square foot area in an eight (8) hour shift to clean.

47. On some occasions, Plaintiff was only given five (5) minutes to get from one building to another.

48. Other coworkers (i.e. Jim Olstead and Dan [last name unknown]) were given flexibility in their break times and were given the ability to leave campus for lunch.

49. Plaintiff was not granted those same opportunities.

50. Plaintiff was also prohibited from, or was not offered, overtime assignments to his financial detriment.

51. Other employees were not subjected to this same treatment.

52. Defendant Goss and Figueroa also spread malicious rumors and

53. Plaintiff began experiencing detrimental health issues due to the stress of his increased workload and the discrimination he was experiencing.

54. Plaintiff began experiencing dizziness, anxiety, loss of sleep, chest pains, high blood pressure, numbness, back pain, and muscle pain.

55. One on occasion, Plaintiff fell down the stairs.

56. Plaintiff attempted to report the workplace incident, but Defendant Gaddy would not allow him to do so.

57. Plaintiff turned to his Union for help.

58. The Union attorney offered to conduct mediation.

59. Part of the terms of mediation were for both Defendant Figueroa and Plaintiff to see a psychologist for ninety (90) days.

60. Plaintiff accepted, but two days after accepting mediation, Defendant Gaddy put Plaintiff on administrative leave.

61. During his administrative leave, Plaintiff dutifully saw the psychologist.

62. Defendant Figueroa failed to see the psychologist.

63. Plaintiff's work environment did not improve upon his return from administrative leave and he continued to face harassment and discrimination from Defendant Gaddy and Defendant Figueroa.

64. On October 6, 2023, Plaintiff received a termination letter from Defendant Gaddy.

65. Plaintiff was unlawfully terminated for the pretextual reason of having a poor work ethic.

66. Plaintiff worked tirelessly for over twenty-four (24) years with glowing reviews from former faculty and staff.

67. Plaintiff was highly qualified for his position yet, after he was terminated, he was replaced with a younger individual.

68. Plaintiff had two degrees and over two decades of experience, making him far more qualified than Defendant Figueroa.

69. However, Defendant Sussex failed to promote Plaintiff, instead opting for Defendant Figueroa who lacked the experience and knowledge.

70. Defendant Sussex also failed to protect Plaintiff from discrimination and harassment, despite Plaintiff making numerous complaints to Human Resources.

## CAUSES OF ACTION

### COUNT I
**29 U.S.C. § 623**
**Age Discrimination**
**(*Plaintiff v. Defendant Sussex County Community College*)**

71. Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

72. The ADEA provides, in relevant part, that "it shall be unlawful for an employer… to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, and privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

73. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Day v. Sears*, No. 12-cv-6474, 2014 U.S. Dist. LEXIS 5568, at *12 (E.D. Pa. Jan. 15, 2014), *quoting Burdine*, 450 U.S. at 253-54.

74. At all times material, Plaintiff was in the protected age group and was 40 years old or older.

75. At all times material, Plaintiff was qualified for the position he was working in for Defendants.

76. At all times material Plaintiff performed satisfactory work.

77. At all times material, Plaintiff was treated differently and less favorably than younger employees, particularly than the younger employee who took his job.

78. Plaintiff was adversely affected by the adverse employment action of termination due to Defendant's continual discriminatory actions, comments, and behaviors.

79. Defendants subjected Plaintiff to discriminatory treatment on the basis of his age.

8

80. Defendant targeted Plaintiff because of his age and no similarly situated employees under the age of 40 were subjected to the same discriminatory treatment that Plaintiff was subjected to.

81. The discriminatory actions of Defendants against Plaintiff, as described and set forth above, and in particular, Plaintiff's termination, constitute an adverse employment actions for the purposes of the ADEA.

82. In subjecting Plaintiff to adverse employment actions, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

<u>COUNT II</u>
**ADEA Retaliation**
**29 U.S.C. § 623(d)**
(*Plaintiff v. Defendant Sussex County Community College*)

83. Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

84. The ADEA provides, in relevant part, provides: It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter. 29 U.S.C. § 623(d).

85. As alleged herein, Plaintiff engaged in protected activity under the ADEA including, but not limited to, complaining to Defendants of discrimination in the form of being subjected to the harassing behavior of the individual Defendants by complaining to management through his

Union, complaining directly to HR, and complaining about being passed over for promotions because of his age, among other things.

86. At all times material, Plaintiff acted under a reasonable, good-faith belief that Plaintiff's right to be free from discrimination in the workplace was being violated by Defendants' conduct.

87. Defendants subjected Plaintiff to materially adverse employment actions subsequent to Plaintiff reporting discriminatory conduct, culminating in Defendant's termination of Plaintiff's employment.

88. At all times material, Plaintiff's protected opposition activity was the determinative factor in some or all of Defendants' materially adverse actions against Plaintiff.

89. At all times material, Plaintiff's protected opposition activity was the but-for cause of some or all of Defendants' materially adverse actions against Plaintiff.

90. The temporal proximity between Plaintiff's protected activity and Defendants' decision to take materially adverse action against Plaintiff as well as the constant and sustained hostility and discrimination Plaintiff experienced and endured is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

91. Defendants' materially adverse actions against Plaintiff in retaliation for Plaintiff's protected opposition activity were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

92. Defendants' actions to take materially adverse employment actions against Plaintiff in retaliation for Plaintiff's protected opposition activity are unlawful employment practices in violation of the ADEA.

93. Defendants are vicariously liable for the unlawful actions of its employees or agents against Plaintiff in the course and scope of their employment with Defendants since Plaintiff's supervisors were empowered to take materially adverse actions against him and did so.

94. As a result of Defendants' retaliatory conduct in violation of the ADEA, Plaintiff has suffered and continues to suffer emotional and financial harm.

95. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the ADEA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

96. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

97. Alternatively, Defendants' actions were motivated by the foregoing discrimination and thus Plaintiff is entitled to attorney's fees under the mixed-motive theory of liability.

98. The conduct of the Defendants deprived Plaintiff of his statutory rights guaranteed under the ADEA.

99. Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

100.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the ADEA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

101.     Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost

economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

102.    Alternatively, Defendants' actions were motivated by the foregoing discrimination and thus Plaintiff is entitled to attorney's fees under the mixed-motive theory of liability.

103.    The conduct of the Defendants deprived Plaintiff of his statutory rights guaranteed under the ADEA.

104.    Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT III
### National Origin and Religious Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (*Plaintiff v. Defendant Sussex County Community College*)

105.    Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

106.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part: "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

107.    At all times material, Plaintiff's national origin was and is Russian.

108.    At all times material, Plaintiff's religion was Russian Orthodox.

109.     At all times material, Defendants had actual and/or constructive knowledge of Plaintiff's national origin.

110.     At all times material, Defendants had actual and/or constructive knowledge of Plaintiff's religion.

111.     Defendants subjected Plaintiff to disparate treatment in the terms and conditions of his employment during his employment because of his national origin.

112.     Defendants subjected Plaintiff to disparate treatment in the terms and conditions of his employment during his employment because of his religion.

113.     Defendants terminated Plaintiff's employment on October 6, 2023.

114.     At all times material, Plaintiff's national origin and/or religion was the motivating and/or determinative factor in Defendants' disparate treatment of Plaintiff and decision to discriminate against, retaliate against, and terminate Plaintiff's employment.

115.     Defendants' decision to terminate Plaintiff because of Plaintiff's national origin and/or religion was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

116.     Defendants' decision to terminate Plaintiff's employment because of Plaintiff's national origin and/or religion is an unlawful employment practice in violation of Title VII.

117.     As a direct and proximate result of Defendants' unlawful termination of Plaintiff's employment in violation of Title VII because of his national origin and/or religion, Plaintiff has suffered and continues to suffer emotional and financial harm.

## <u>COUNT IV</u>
### Hostile Work Environment in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq
### (*Plaintiff v. Defendant Sussex County Community College*)

118.     Plaintiff repeats, incorporates by reference, and realleges every allegation in this

Complaint as if fully set forth herein at length.

119.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant

part:

a.     "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

120.     Title VII also prohibits hostile work environment harassment, defined as unwanted

comments or conduct regarding the Plaintiff's protected characteristics that have the

purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's

employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

121.     Defendant Sussex County Community College intentionally discriminated against

Plaintiff in the terms and conditions of his employment on the basis of Plaintiff's national

origin and/or religion.

122.     Defendant Sussex County Community College delegated to Defendants James

Gaddy, and Rose Figueroa the authority to control Plaintiff's work environment, and they

abused that authority to create a hostile work environment.

123.     At all times material, Defendants James Gaddy, and Rose Figueroa's intentional, discrimination based on Plaintiff's national origin and/or religion was not welcomed by Plaintiff.

124.     At all times material, the intentional, discrimination based on Plaintiff's national origin and/or religion by Defendants was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

125.     At all times material, Plaintiff believed his work environment to be hostile or abusive as a result of Defendants' discriminatory conduct on the basis of Plaintiff's national origin and/or religion.

126.     The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

127.     Defendants provided a futile avenue for complaint.

128.     Defendants retaliated against Plaintiff for his complaints about their national origin and/or religious discrimination.

129.     Defendants acted upon a continuing course of conduct.

130.     Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

131.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT V
**Retaliation in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.***
**(*Plaintiff v. Defendant Sussex County Community College*)**

132.    Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

133.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

134.    As alleged herein, Plaintiff engaged in protected activity under Title VII including, but not limited to opposing Defendants' unlawful discriminatory employment practices, complaining to Defendant GRADY, through his Union, to HR, and other complaints.

135.    At all times material, Plaintiff acted under a reasonable, good-faith belief that Plaintiff's right to be free from discrimination in the workplace was being violated by Defendants' conduct.

136.    Defendants subjected Plaintiff to materially adverse employment actions subsequent to Plaintiff reporting discriminatory conduct, culminating in Defendant's termination of Plaintiff's employment on October 6, 2023.

137.    At all times material, Plaintiff's protected opposition activity was the determinative factor in some or all of Defendants' materially adverse actions against Plaintiff.

138.    At all times material, Plaintiff's protected opposition activity was the but-for cause of some or all of Defendants' materially adverse actions against Plaintiff.

139.     The temporal proximity between Plaintiff's protected activity and Defendants' decision to take materially adverse action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

140.     Defendants' materially adverse actions against Plaintiff in retaliation for Plaintiff's protected opposition activity were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

141.     Defendants' actions to take materially adverse employment actions against Plaintiff in retaliation for Plaintiff's protected opposition activity are unlawful employment practices in violation of Title VII.

142.     Defendant Sussex County Community College is vicariously liable for the unlawful actions of its employees or agents against Plaintiff in the course and scope of their employment with Defendants.

143.     As a result of Defendants' retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, Plaintiff has suffered and continues to suffer emotional and financial harm.

### <u>COUNT VI</u>
**Age, National Origin, and Religion Discrimination in Violation of**
**New Jersey Law Against Discrimination (NJLAD or LAD) N.J.S.A. 10:5-1 *et. seq.*,**
**(*Plaintiff v. Defendant Sussex County Community College*)**

144.     Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

145.     The New Jersey Law Against Discrimination (NJLAD) provides in relevant part as follows:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, pregnancy or breastfeeding, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment...

N.J.S.A. § 10:5-12(a).

146.    Defendants are employers and supervisors/managers of Plaintiff.

147.    Plaintiff is a man over 40 years of age of Russian national origin and Russian Orthodox religion and these are protected classes as defined by the NJLAD.

148.    Defendants' actions as set forth above and incorporated herein violate the NJLAD.

149.    Defendants individually and jointly, in their individual and official capacities, took adverse action against plaintiff or allowed others to take adverse action against plaintiff based on Plaintiff's age, national origin, and/or religion.

150.    At all pertinent times, the discriminatory actions complained of herein occurred in New Jersey and Plaintiff was unlawfully discriminated against on the basis of his age, national origin, and/or religion.

151.    As a direct and proximate result of Defendants' retaliation and unlawful termination of Plaintiff's employment in violation of NJLAD's prohibitions against age, national origin, and/or religion discrimination Plaintiff has suffered and continues to suffer emotional and financial harm including loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages,

embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

152.     Defendants' actions were willful and wanton and thus require the imposition of punitive damages.

153.     Alternatively, Defendants' actions were motivated by the foregoing discrimination and retaliation and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

<u>**COUNT VII**</u>
**Hostile Work Environment in Violation of**
**New Jersey Law Against Discrimination (NJLAD or LAD) N.J.S.A. 10:5-1 *et. seq.*,**
**(*Plaintiff v. Defendant Sussex County Community College*)**

154.     Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

155.     Defendants are employers and supervisors/managers of Plaintiff.

156.     Defendant Sussex County Community College intentionally discriminated against Plaintiff in the terms and conditions of his employment on the basis of Plaintiff's age, national origin, and/or religion.

157.     Defendant Sussex County Community College, delegated to and Defendants James Gaddy, and Rose Figueroa in their capacity as Plaintiff's supervisors the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

158.     At all times material, Defendants' intentional, discrimination based on Plaintiff's age, national origin, and/or religion was not welcomed by Plaintiff.

159.     At all times material, the intentional, discrimination based on Plaintiff's age, national origin, and/or religion by Defendants was so severe and/or pervasive that a

reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

160.     At all times material, Plaintiff believed his work environment to be hostile or abusive as a result of Defendants' discriminatory conduct on the basis of Plaintiff's age, national origin, and/or religion.

161.     The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

162.     Defendants provided a futile avenue for complaint.

163.     Defendants retaliated against Plaintiff for his complaints.

164.     Defendants acted upon a continuing course of conduct.

165.     Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally and state protected civil rights.

166.     As a result of Defendants' violations of NJLAD, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.


### COUNT VIII
**Retaliation in Violation of New Jersey Law Against Discrimination (NJLAD or LAD) N.J.S.A. 10:5-1 *et. seq.***
(*Plaintiff v. Defendant Sussex Community College*)

167.     Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

168.     Plaintiffs complaints and requests that Defendants refrain from and remedy the previously-described unlawful discrimination and harassment were responded to in a

retaliatory manner, subjecting plaintiff to further discrimination and unreasonable and unnecessary exposure to a harassing, discriminatory and hostile workplace environment in violation of the Law Against Discrimination, N.J .S.A. 10:5-1, *et. seq.*

169.    Defendants' retaliatory and illegal conduct towards Plaintiff was in direct violation of the protections and guarantees of the Law Against Discrimination, N.J.S.A. 10: 5-1, *et. seq.*

170.    Defendants' retaliatory and illegal conduct towards Plaintiff violated the Law Against Discrimination's clear mandate of public policy that discrimination and harassment based upon the race and/or sex of an employee is a cancer upon society that must be eradicated, and that individuals have a statutory right to freedom from such harassment and discrimination without retaliation from either their employers or co-employees.

171.    As a direct and proximate result of Defendants' retaliation and unlawful termination of Plaintiff's employment in violation of  NJLAD's prohibitions against discrimination Plaintiff has suffered and continues to suffer emotional and financial harm including loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

172.    Defendants' actions were willful and wanton and thus require the imposition of punitive damages.

173.    Alternatively, Defendants' actions were motivated by the foregoing discrimination and retaliation and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

<u>COUNT X</u>
**Aiding and Abetting in Violation of New Jersey Law Against Discrimination
(NJLAD or LAD) N.J.S.A. 10:5-1 *et. seq*.
(*Plaintiff v. Defendants James Gaddy and Rose Figueroa*)**

174.     Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

175.     New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination. It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

176.     As set forth above in the factual allegations, Defendants, by virtue of their supervisory position and actions taken against Plaintiff in that capacity, engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

177.     Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) *et. seq*.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff demands judgment against the named Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and lost wages, punitive damages, liquidated damages, equitable damages, statutory damages, attorneys' fees, costs, interest and disbursements of action, and for all other relief available under the law or at equity.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.


Date: <u>April 22, 2025</u>                    **DEREK SMITH LAW GROUP, PLLC**
By: *<u>/s/ Timothy J. Prol, Esq.</u>*
TIMOTHY PROL, ESQ.
PA Attorney ID: 319524
NJ Attorney ID: 125782014
1628 Pine Street
Philadelphia, PA 19103
Phone: 215-391-4790
Fax: 215-893-5288
Email: tim@dereksmithlaw.com
*Attorneys for Plaintiff, Sergey Stolyarov*